UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**NADINE WALKER,**

             **Plaintiff,**

**v.**                                       **Case No:  6:15-cv-1002-Orl-41KRS**

**GEICO INDEMNITY COMPANY,**

             **Defendant.**

_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Renewed Motion to Compel Return of Inadvertently Produced Documents, and Motion for Sanctions ("Motion to Compel," Doc. 67), and Plaintiff's Motion to Disqualify [Defendant's] Counsel, and Motion for Sanctions ("Motion to Disqualify," Doc. 29). United States Magistrate Judge Karla R. Spaulding issued an Order (Doc. 70), granting the Motion to Compel, to which Defendant has filed an Objection (Doc. 81). Judge Spaulding also issued an Amended Report and Recommendation ("R&R," Doc. 106), recommending that the Court grant the Motion to Disqualify but deny the request for monetary sanctions, to which Defendant also filed an Objection (Doc. 109). Plaintiff did not object to either.

### I.    BACKGROUND

Plaintiff alleges that she was injured when she was struck by an automobile operated by non-party Priscilla Condemarin. (Am. Compl., Doc. 14, ¶ 6). At the time, Condemarin was insured by Defendant. (*Id.* ¶ 4). The insurance contract at issue had bodily injury liability limits of $10,000.00 per person and $20,000.00 per occurrence. (*Id.* ¶ 5). According to Plaintiff, in December 2007, Defendant advised Plaintiff's attorney at the time, Michael Sutton, that it intended to tender the full $10,000.00 policy limits. (*Id.* ¶ 9). Sutton made note of this conversation in his

case management software and included his mental impressions regarding whether any such check should be returned. (Hr'g Tr., Doc. 107, at 92:3–11; *see also* Second Am. Privilege Log, Doc. 67-10, at 3 (Dec. 17, 2007 entry)). Despite Defendant's representation that it would tender the policy limits, it did not do so. (Doc. 14 ¶ 9). Therefore, Plaintiff filed suit against Condemarin (the "underlying litigation") and obtained a judgment in the amount of $3,022,991.65. (*Id.* ¶¶ 10, 14; Am. Final J., Doc. 14-3, at 1). In August 2008, during the pendency of the underlying litigation, Defendant finally tendered the $10,000.00 to Plaintiff, which she rejected, allegedly due to Defendant's failure to timely resolve the claim. (Doc. 14 ¶ 12–13). After obtaining the excess judgment, Plaintiff filed this case, asserting one claim of "bad faith"—i.e., that Defendant breached its duty of care under the insurance contract. (*Id.* ¶¶ 16–23).

Around the time that Defendant tendered the policy limits to Plaintiff, Plaintiff's underlying attorney, Sutton, consulted with one of Plaintiff's current attorneys, Fred Cunningham, regarding the viability of Plaintiff's bad faith claim. (Doc. 107 at 36:21–37:12). They had several phone consultations. (*Id.* at 36:21–23). To enable Cunningham to provide a useful assessment, Sutton sent a letter and attached documents to Cunningham, including a timeline of events created by Sutton. (*Id.* at 41:12–20; Sutton Aff., Doc. 67-12, ¶ 30). During the calls with Cunningham, Sutton made handwritten notes, documenting Cunningham's mental impressions regarding Defendant's handling of the underlying claim and the viability of a bad faith claim. (Doc. 67-12 ¶¶ 17, 23, 65). Sutton also sent Plaintiff a letter, which discussed the strategy moving forward with the bad faith case, Sutton's assessment of the likelihood of success in the bad faith litigation, and a summary of Sutton's understanding of Cunningham's assessment of the likelihood of success. (*Id.* ¶ 27). Sutton also made notes containing the substance of his conversations with Cunningham, including Cunningham's assessment of the viability of the bad faith claim and advice

regarding strategy, in his case management software. (*Id.* ¶¶ 40, 42, 43, 47, 55, 56, 59). After Sutton received the check for the policy limits, Sutton sent an e-mail to his legal assistant and his paralegal with directions to return the check, which included notes pertaining to the underlying liability. (Doc. 67-10 at 5)

During the pendency of discovery in this case, Defendant sent Plaintiff a Request to Produce ("RTP," Doc. 67-1). Included in the RTP was a request for the underlying litigation file (the "Sutton File"), which one of Plaintiff's attorneys, Greg Yaffa, agreed to obtain from Sutton and to produce. (Yaffa Aff., Doc. 67-5, ¶ 6; Doc. 107 at 94:4–9). In so agreeing, Yaffa stated that he would remove all privileged documents from the file and produce it along with a privilege log. (Doc. 67-5 ¶ 6). Plaintiff's response to the RTP also stated "It is anticipated that documents responsive to this request will be contained in the underlying litigation files . . . . These files are not currently in the Plaintiff's possession and it is anticipated that the responsible parties will prepare a privilege log relating to said files." (Pl.'s Resp. to RTP, Doc. 67-2, at 2). Plaintiff's law firm, Domnick Cunningham & Whalen[1] (the "Cunningham Firm") received the Sutton File around December 16, 2015. (*See* Dec. 16, 2015 through Jan. 20, 2016 E-mail Chain, Doc. 67-3, at 4). It was contained in nine bankers' boxes, consisting of over 17,000 pages. (*Id.*; Doc. 67-5 ¶ 16). The Sutton File included all of the above-referenced notes and correspondence created by Sutton. (*See generally* Doc. 67-10). Upon receipt, Yaffa contacted Amanda Kidd, an associate attorney with Defendant's law firm, regarding the specifics of the production of the Sutton File. (Doc. 67-3 at 4). In a follow up e-mail, Yaffa again confirmed that he would "produce all of the non privileged documents" in the Sutton File. (*Id.* at 3).

---

[1] Since then, Plaintiff's law firm's name has changed to Cunningham Whalen & Gaspari. The pertinent attorneys have remained on this case.

A legal assistant at the Cunningham firm, Laura Sabbatino, sent the Sutton File to a copy service to have it copied and bates stamped. (Sabbatino Aff., Doc. 67-6, ¶¶ 8–9). When Sabbatino received the file back, the attorneys discovered that the service failed to bates stamp it. (*Id.* ¶ 11). Sabbatino then re-sent the Sutton File to the copy service. (*Id.* ¶ 12). She received the bates-stamped file back from the copy service on January 13, 2016. (*Id.* ¶ 16). During this time, Sabbatino was contacted at least twice by a legal assistant at Defendant's law firm, Young, Bill, Boles, Palmer & Duke, P.A. (the "Young Firm"), regarding when the Young Firm could expect delivery of the Sutton File. (*See* Doc. 67-3 at 1, 2). Sabbatino, who, although otherwise an experienced legal assistant, was new to the Cunningham Firm, felt that the production of the Sutton File was delinquent and that she needed to expedite its delivery to the Young Firm. (Doc. 67-6 ¶¶ 2–5, 18). Therefore, Sabbatino drafted a cover letter for her own signature, rather than one of the attorneys' signatures, and sent a CD containing an electronic copy of the entire Sutton File to the Young Firm via overnight mail. (*Id.* ¶¶ 18, 20). Sabbatino did not copy any of the attorneys at the Cunningham Firm on her communications regarding the production of the Sutton File, nor did she advise the attorneys that she had sent the file. (*Id.* ¶¶ 13–15, 20, 22; Doc. 67-5 ¶ 21; Cunningham Aff., Doc. 67-4, ¶¶ 21–22; *see also* Doc. 67-3 (exhibiting that no attorneys at the Cunningham Firm were copied on Sabbatino's e-mails with the Young Firm regarding the production of the Sutton File)). Indeed, after Sabbatino's production of the Sutton File, attorneys at the Cunningham Firm continued to work on the file, reviewing documents and starting a privilege log. (Doc. 67-4 ¶¶ 19–20; Doc. 67-5 ¶¶ 18–19).

When the Young Firm received the file, the electronic documents were placed on the firm's internal server. (Doc. 107 at 99:19–21). Kidd accessed the file and did a "scrolling review" of all the documents, viewing every document in the Sutton File and selecting certain folders to be

Case 6:15-cv-01002-CEM-KRS   Document 111   Filed 03/30/17   Page 5 of 27 PageID 16403

printed for a more thorough review. (*Id.* at 99:24–100:7; Kidd Dep., Doc. 97-1, at 23:21–24:4). [2]

Kidd observed that there was no privilege log provided with the Sutton File. (Doc. 107 at 138:21–139:1). She also recognized that the Sutton File included documents over which privilege could have been asserted. (*Id.* at 126:13–14). In fact, Kidd testified that she was "surprised" and thought it was "unusual" that the Cunningham Firm would produce such documents, but she did not think the disclosure was inadvertent. (*Id.* at 126:4–7; Doc. 97-1 at 39:15–18).

One of the documents Kidd reviewed in depth was Sutton's December 2007 case notes made after his call with Defendant, where Defendant advised that it would tender the policy limits; the note included Sutton's opinion regarding whether Plaintiff should return any such tendered check. (*See* Doc. 97-1 at 33:20–34:1). Kidd believed the note was relevant to Defendant's affirmative defense that Plaintiff was unwilling to settle her claim, (*see* Doc. 107 at 135:18–136:5), and Kidd advised her supervising attorney, Richard Young, of the contents of these notes and provided him with a copy, (Doc. 97-1 at 33:20–34:1; Young Dep., Doc. 97-2, at 35:15–36:12). Young was in the midst of three back-to-back trials at the time, and therefore, he did not give these documents his full attention. (Doc. 97-2 at 20:15–19). Kidd also sent at least one document to Defendant's representatives via e-mail. (Doc. 97-1 at 36:12–21). In addition, such information was discussed between Young, Kidd, and Defendant's representative in the context of whether to accept a settlement offer from Plaintiff. (Doc. 97-2 at 31:20–32:1).

Based on the documents in the Sutton File regarding Sutton's consultation with Cunningham, Kidd determined that Cunningham was a potential witness in this case. (Doc. 107 at 128:5–13). Kidd believed Cunningham had information regarding Plaintiff's willingness to settle

---

[2] Although the depositions of Kidd and Young were not admitted into evidence at the hearing, the parties agreed that they wanted the Court to review and utilize those depositions in the resolution of the Motion to Disqualify. (Doc. 107 at 84:7–21).

the underlying case and her reasons for rejecting the policy limits. (*Id.*). On March 15, 2016, the Young Firm sent a request to the Cunningham Firm to conduct the deposition of Cunningham. (Doc. 67-4 ¶ 21; Doc. 67-5 ¶ 20). It was this request that first notified any attorney at the Cunningham Firm that the full Sutton File had been produced. (Doc. 67-4 ¶¶ 21–22; Doc. 67-5 ¶¶ 20–21). Cunningham and Yaffa immediately called the Young Firm, asking for Kidd or Young. (Doc. 67-4 ¶ 24–25; Doc. 67-5 ¶¶ 23–24). When neither were available, a message was left. (Doc. 67-4 ¶ 25; Doc. 67-5 ¶ 24). The next day, when neither Kidd nor Young had returned the call, Cunningham sent the Young Firm a letter, transmitted via e-mail, advising the Young Firm that the Sutton File was inadvertently disclosed and demanding its immediate return, which would be replaced by a file with the privileged information removed and a privilege log. (Doc. 67-4 ¶ 26; Doc. 67-5 ¶ 25; Mar. 16, 2016 Letter, Doc. 67-7).

The next day, Kidd responded via e-mail stating that she and Young were out of the office and requesting five days to respond to the letter. (Mar. 17, 2016 E-mail Chain, Doc. 67-8, at 1). Cunningham responded that he was concerned about "being accused of not acting immediately when we became aware of the inadvertent disclosure." (*Id.*). Kidd responded, "This is not an issue. You are obviously acting immediately and I am not disputing that." (*Id.*).

On March 22, 2016, Kidd sent a letter to the Cunningham Firm, refusing to return the Sutton File, but agreeing to sequester them, stating: "[A]s an officer of the court and in the spirit of good faith, we will agree to not review or utilize the documents for a sufficient length of time so that the court can determine whether production of over 17,000 pages without a privilege log is considered to be a waiver." (Mar. 22, 2016 Letter, Doc. 67-9, at 1). Thereafter, Kidd filed a motion to compel the deposition of Cunningham. In that motion, Kidd referenced and quoted information

contained in the documents that were subject to sequestration.[3] Two weeks after the Cunningham Firm demanded the return of the Sutton File, it produced a privilege log to the Young Firm. (*See* Doc. 97-1 at 63:10–15 (agreeing that Plaintiff produced a privilege log on the day that her first motion to compel was filed); Doc. 27 (exhibiting that Plaintiff's first motion to compel was filed on March 29, 2016)).

## II.   STANDARD OF REVIEW

Plaintiff's objections to the Magistrate Judge's Order are reviewed under the "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a); *Hallford v. Allen*, No. 07-0401-WS-C, 2007 WL 2570748, at *1 (S.D. Ala. Aug. 30, 2007) (citing additional authority). The objected-to portions of the R&R are reviewed *de novo*. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

## III.   MOTION TO COMPEL RETURN OF DOCUMENTS

The parties agree that Plaintiff has established a *prima facie* case of privilege for all of the items listed on the Second Amended Privilege log. Plaintiff asserts that Defendant should be required to return all of those documents. Defendant argues that it should not be compelled to do so because Plaintiff waived any privilege or protection and that the work product protection does not apply in bad faith cases to the type of documents at issue here. Each argument will be addressed in turn.

### A.   Waiver by Disclosure

Defendant argues that Plaintiff's disclosure of privileged information waived any privilege or protection. Federal Rule of Evidence 502(b) provides that when a disclosure is made in a federal

---

[3] Defendant's motion to compel has since been placed under seal and is on file with the Court. (*See* July 7, 2016 Order, Doc. 69).

proceeding, it "does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Judge Spaulding determined that Plaintiff satisfied all three elements, and therefore, Plaintiff's inadvertent disclosure did not constitute a waiver. Defendant objects.

### 1.    *Inadvertent Disclosure*

Judge Spaulding found that the disclosure was inadvertent because it was clearly a mistake and there was no evidence that Plaintiff intended to waive her privileges. Rule 502 does not define inadvertence. Some courts take a common-sense approach, "essentially asking whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2015 WL 1565310, at *8 (S.D. Fla. Apr. 8, 2015) (quotation omitted). Others continue to use pre-502[4] factors, "including the total number of documents reviewed, the procedures used to review the documents before production, and the actions of the producing party after discovering that the documents had been produced." *Id.* The Court agrees with Judge Spaulding that, in this situation, incorporating the pre-502 considerations is unnecessary because they are adequately addressed under the other 502 factors. *See* Fed. R. Evid. 502 Advisory Committee's Note to 2008 Amendment (noting that while Rule 502(b) "is flexible enough to accommodate any of [the pre-502] factors," "[t]he rule does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case").[5]

---

[4] Rule 502 was enacted on September 19, 2008. 28 U.S.C. § 502 Note, 122 Stat. 3537.
[5] The Court does not express an opinion as to whether the pre-502 factors could be relevant to the inadvertence analysis under a different set of facts.

The Court also agrees with Judge Spaulding that the evidence indicates that Plaintiff did not intend to waive her privileges. Defendant asserts that this determination was erroneous, but its arguments are somewhat confusing. Defendant argues that, overall, Plaintiff was not diligent in producing the Sutton File, and therefore, somehow, that delay exhibits an intention to disclose and waive privileged information. First, Defendant skews the facts. While Defendant correctly asserts that the Sutton File was not produced for 120 days after the formal request for production, Defendant ignores the fact that the Sutton File was not in Plaintiff's possession and that Defendant agreed to extensions of time.[6] Second, Defendant fails to explain how a delay in producing documents evidences an intent to disclose privileged materials.

Next, Defendant asserts that Plaintiff's disclosure of over 17,000 pages without a privilege log or an indication of asserting a privilege evidences that Plaintiff intended to waive her privilege. Defendant is incorrect that Plaintiff gave no indication that it was intending to assert any privileges—in the communications between counsel leading up to the production, Plaintiff's counsel referenced creating a privilege log and asserting privileges with regard to the Sutton File at least twice. Second, the mere fact that the documents were disclosed without a privilege log does not indicate that Plaintiff intended to waive her privileges under the specific circumstances here; it is undisputed that Sabbatino incorrectly disclosed the documents without consulting her supervising attorneys. Moreover, the attorneys were in the process of reviewing the Sutton File for the purpose of creating a privilege log at the time Sabbatino sent the file to Defendant and continued to do so after the disclosure, indicating that Plaintiff's attorneys were not aware of, nor

---

[6] Although not relevant to the waiver analysis, it is concerning to the Court that Defense counsel repeatedly characterized these extensions as solely Plaintiff's counsel's delay, but at the hearing on the motion to disqualify, Kidd admitted that at least one of these extensions was mutual because both firms were busy getting ready for trials. (Doc. 107 at 106:19–107:16).

did they intend, such disclosure. Defendant's focus on the narrow fact that a privilege log did not accompany the file without explaining the context of the disclosure ignores the forest for the trees.

Finally, Defendant asserts that Sabbatino's Affidavit and Yaffa's Affidavit contradict one another. They do not. Sabbatino avers that there were delays in obtaining a bates-stamped version of the Sutton File and that Defendant's counsel's office was repeatedly contacting her, inquiring as to the status of the file. As a result, Sabbatino felt rushed and pressured to produce the file quickly. Yaffa avers that, in his opinion, there was no rush to produce the file because of the agreed extensions of time and the fact that the discovery deadline was in the distant future. These statements merely express the opinions and experiences of each individual. Both Yaffa and Sabbatino also agree that they did not discuss the status of the Sutton File at the time. Therefore, it is entirely reasonable that Sabbatino, who was new to the office, felt rushed to produce the file while Yaffa, and experienced litigator who was not copied on the e-mails from Defendant's firm inquiring as to the status of the Sutton File, did not.

Accordingly, Defendant has not established that Judge's Spaulding's determination that Plaintiff's disclosure was inadvertent was clearly erroneous or contrary to law.

## 2.    *Reasonable Steps to Prevent Disclosure*

It is undisputed that Plaintiff's law firm implemented the following procedure to avoid disclosure of privileged materials: once a bates stamped copy of the underlying litigation file is obtained, an assigned attorney will review the file and prepare a privilege log; then, prior to transmitting the file to opposing counsel, an attorney must conduct a final review and sign the transmittal letter, confirming that what is being disclosed is appropriate. (Doc. 67-4 ¶ 9; Doc. 67-5 ¶ 7; Doc. 67-6 ¶ 8). Judge Spaulding determined that this procedure constituted reasonable steps to prevent disclosure. Defendant objects to this determination.

Defendant first argues that there is no evidence that Sabbatino knew of the procedure prior to this incident or whether she had deviated from such procedures previously. Sabbatino makes clear in her Affidavit that she is familiar with the above-referenced procedure. Although she does not expressly state that she was aware of this procedure prior to this incident, it is certainly implied in the context of her statements. (*See* Doc. 67-6 ¶¶ 9, 19 (noting that she was "[a]ttempting to follow" the firm's procedure and that she "forgot that privileged documents needed to be removed" from the Sutton File)). Other than pure speculation, Defendant has provided no basis for this Court to question Sabbatino's sworn Affidavit. Further, contrary to Defendant's argument, there is testimony that indicates that Sabbatino had not engaged in this type of behavior previously; both Yaffa and Cunningham aver that in the twenty-four years and twelve years, respectively, that each has been litigating bad faith claims with Plaintiff's law firm, neither is aware of any time when firm personnel deviated from this standard procedure. (Doc. 67-4 ¶ 10; Doc. 67-5 ¶ 8). Thus, Defendant's conjecture regarding Sabbatino's knowledge of the procedures and her prior deviations is unsupported and inconsequential.

Defendant also accuses Plaintiff's counsel and Sabbatino of being untruthful in their statements that Sabbatino did not tell her supervising attorneys that she produced the Sutton File and that they did not discuss the Sutton File from the time Sabbatino produced it until the time that Defense counsel requested to take Cunningham's deposition. (*See* Doc. 81 at 10–11 (arguing that Plaintiff's assertion "defies logic and reason," "strains believability" and either is "untrue or further evidence of the entire want of care and lack of diligence . . . ."). Such accusations are unprofessional and baseless.[7]

---

[7] Defense counsel's unabashed accusations against Plaintiff's counsel of being untruthful is disconcerting. These are serious accusations that can result in serious consequences; they should not be made lightly or without proper support. There was no basis for Defense counsel's

Given that Sabbatino thought she was simply completing a task she was assigned combined with the fact that Sabbatino's supervising attorneys were not ready to discuss the matter with Sabbatino yet because they were still reviewing the 17,000-plus pages in the file to determine what items were privileged, it is entirely reasonable that Sabbatino and the attorneys would not have discussed the matter. Further, as noted, Sabbatino felt rushed by Defendant's office, not by her supervising attorneys, so, again, it is believable that she did not feel that it was necessary to update her supervising attorney that she had completed a task she believed was delegated to her, particularly when that attorney was not inquiring as to its status. Plaintiff's firm no doubt handles more than one matter at a time, and it is entirely reasonable that Sabbatino and her supervising attorneys continued to move forward handling their cases without discerning a need to share the minutiae of each completed task.

Finally, with regard to the reasonableness of Plaintiff's precautions, Defendant objects to Judge Spaulding's analysis of *U.S. Fidelity & Guaranty Co. v. Liberty Surplus Insurance Corp.*, 630 F. Supp. 2d 1332 (M.D. Fla. 2007). There, a legal assistant misunderstood the supervising attorney's instructions and included privileged documents in a file that was to be produced. *Id.* at 1340. On the day that the production was due, the supervising attorney was not in the office and the legal assistant took the file to another attorney in the firm who was unfamiliar with the case. *Id.* That attorney signed the transmittal letter without reviewing the file; if he had reviewed it, he would have discovered privileged information because some documents were labeled "privileged and confidential" on their face. *Id.* at 1340–41. The *U.S. Fidelity* court determined that counsel did

---

recrimination. Before making any such allegations in the future, Defense counsel would be well advised to review the portion of the Oath of Admission to the Florida Bar that states: "To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications."

not take reasonable precautions to prevent the inadvertent disclosure of privileged documents. *Id.* at 1341.

As Judge Spaulding cogently explained, *U.S. Fidelity* is distinguishable from the instant case. In *U.S. Fidelity*, the attorney for the producing party was given an opportunity to review the documents before they were produced and did not do so. If he had, he would have discovered the legal assistant's mistake. Here, the attorneys had no knowledge of the production, and they were not given the opportunity to review the documents before they were produced even though the firm's longstanding operating procedures required the legal assistant to bring the documents to an attorney prior to producing them. Contrary to Defendant's assertion, Plaintiff is not attempting to create a "legal assistant exception" to excuse lawyer misconduct. Unlike in *U.S. Fidelity*, there was no lawyer misconduct here.

### 3.    *Prompt, Reasonable Steps to Rectify the Error*

Rule 502 explicitly references the requirements of Federal Rule of Civil Procedure 26(b)(5)(B) regarding whether the disclosing party took prompt, reasonable steps to rectify the inadvertent disclosure. Rule 26(b)(5)(B) provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

Judge Spaulding correctly determined that Plaintiff's counsel acted promptly and reasonably, noting that counsel did exactly what was required by Rule 26(b)(5)(B). Defendant argues that this determination was "unfounded" because Plaintiff's counsel waited two months

after the disclosure to notify Defense counsel. Defense counsel again focuses on certain facts to the exclusion of others. While it is true that the disclosure occurred on January 20, 2016, the undisputed evidence establishes that Plaintiff's counsel was not aware of the disclosure until March 15, 2016, and took steps that day to rectify the problem. To the extent Defendant argues that Plaintiff's counsel was or should have been aware of the disclosure prior to March 15, 2016, such contention relies on counsel's previous ill-advised accusations of untruthfulness and is without merit.

The day Plaintiff's counsel became aware of the disclosure, Plaintiff's counsel called and left a message for Kidd and Young, who were unavailable. The call was not immediately returned, so the next day Plaintiff's counsel sent Defense counsel a letter explaining the situation and demanding the immediate return of the Sutton File. On March 17, 2016, Kidd responded and requested that she be given until March 22, 2016, to respond to the letter because she was on vacation. Plaintiff's counsel immediately responded and expressed concerns of "being accused of not acting immediately when we became aware of the inadvertent disclosure." (Doc. 67-8 at 1). As noted, Kidd responded: "That is not an issue. You are obviously acting immediately and I am not disputing that." (*Id.*). Defense counsel has now, apparently, decided to retract such assurances. Regardless, the argument is without merit.

Defense counsel also asserts that Plaintiff's counsel did not act promptly because a privilege log was not provided for two weeks following the discovery of the disclosure. In the initial letter from Plaintiff's firm to Defense counsel, Plaintiff's counsel explained: "I have segregated the non-privileged portion of [the Sutton F]ile and can produce that to you upon your return of the entire file. I am currently creating a privilege log for the hundreds of documents that we believe fall within the attorney-client and/or work-product privileges." (Doc. 67-7 at 2). Kidd's

e-mail response to this letter, requesting additional time to respond, gave no indication that Defendant's firm would refuse to return the Sutton File, only that Defense counsel needed more time because she was not physically in the office. On March 22, 2016, Defense counsel responded, indicating that they would not return the Sutton File. As noted by Judge Spaulding, until the March 22 letter, Plaintiff's firm had no reason to believe that Defense counsel would not return the file. Further, Defense counsel has provided no authority to indicate that immediately notifying opposing counsel of an inadvertent disclosure and then finalizing a privilege log is inappropriate. Further, there is no basis to argue that two weeks to finalize a privilege log for a 17,000-plus page file is unreasonable. Even though the file had been in Plaintiff's possession prior to that time, at least in Plaintiff's counsel's view, there was no urgency to finalize the privilege log prior to these incidents due to the parties' agreed extensions of time.

Accordingly, Defendant's arguments with regard to the inadvertent disclosure are without merit. The Court agrees with Judge Spaulding's determination that Plaintiff did not waive her privileges or protections due to disclosure.

### B.      Waiver by Failing to Provide a Privilege Log

Defendant asserts that Plaintiff waived her privileges by failing to timely provide a privilege log. Defendant conflates this argument with the arguments made in the waiver by disclosure section. As addressed above, those arguments fail. The only other argument that Defendant makes in this regard is that Plaintiff should have provided a privilege log on the date that the response to Defendant's RTP was due. As explained by Judge Spaulding, Plaintiff was not in possession of the Sutton File at the time, the parties had discussed this fact, and they were in agreement that Plaintiff would have more time to obtain it. Necessarily, Plaintiff could not have produced a privilege log regarding a file that was not in its possession. Defendant's objections to

Judge Spaulding's determination that Plaintiff did not waive her privileges by failing to provide a privilege log at the time the response was due are without merit.

### C.      Waiver by Failing to Object

Defendant also asserts that Plaintiff waived her privileges and protections by failing to assert any objections in her initial response to the RTP. Judge Spaulding determined that no objections to the RTP were necessary because the request explicitly exempted privileged information,[8] Plaintiff did not have the Sutton File in her possession at the time, and Yaffa notified Kidd that he would be filing a privilege log once he obtained and reviewed the Sutton File. Defendant does not address the fact that its RTP specifically exempted privileged documents, rendering an objection unnecessary. Instead, Defendant expects this Court to ignore reality and determine that Plaintiff should have made specific attorney-client privilege and work-product protection claims for a file that was not in Plaintiff's possession. Under the facts of this case, Plaintiff was not required to do so.

Further, Defendant's argument that it had no notice that Plaintiff was going to be asserting any privileges because, in other cases, Plaintiff's counsel had made the strategic decision to produce certain privileged materials is unavailing. First, Defendant does not assert that in previous cases Plaintiff's counsel produced *entire* underlying litigation files without privilege logs, as occurred here, only that certain documents over which privilege could be asserted had been produced in previous cases. Moreover, Yaffa told Kidd more than once that he would review the Sutton File when he obtained it and create a privilege log. As Judge Spaulding found, that was

---

[8] As Judge Spaulding noted, the parties used the term privilege to apply to both attorney-client privileged documents and work product protected documents.

sufficient in this case. Particularly where the Defendant agreed to give Plaintiff more time to obtain and review the Sutton File.

**D.          Waiver by Issue Injection**

Defendant next argues that Plaintiff has waived her work product protection by putting her willingness to settle the underlying case at issue. Judge Spaulding properly rejected this argument because Plaintiff did not put the issue of her willingness to settle at issue; Defendant did. *Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 WL 384745, at *4 (S.D. Fla. Jan. 27, 2010) ("[T]he plaintiff did not inject the issue by suing for bad faith. Rather, it was the defendant insurer who injected the issue of the plaintiff's alleged 'unwillingness' to settle as a *defense*. . . . [The defendant] cannot inject an issue in this case and then claim the privilege has been waived by the other party.").

**E.          Application of Work-Product Protection**

Finally, Defendant argues that the work product protections do not apply in bad faith cases to items prepared in anticipation of the underlying litigation prior to its resolution. Defendant relies on *Allstate Indemnity Co. v. Ruiz*, 899 So. 2d 1121 (Fla. 2005) and its progeny. In *Ruiz*, the Florida Supreme Court stated that, in bad faith litigation, work product protection does not automatically apply to *the insurer's* "materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages." *Id.* at 1129–30. In doing so, the *Ruiz* court emphasized that this "claim file type material presents *virtually the only source* of direct evidence with regard to the essential issue of the insurance company's handling of the insured's claim. *Id.* at 1128 (emphasis added). The

*Ruiz* Court did not address whether the work product protection applied in the same manner to the insured's underlying materials.

Judge Spaulding determined that *Ruiz* did not stand for the blanket proposition that work product protections do not apply to any documents prepared in anticipation of the underlying litigation. Instead, Judge Spaulding required Defendant to comply with Rule 26(a)(3) and make a showing of substantial need. Defendant has not established that Judge Spaulding's analysis is contrary to law.

Defendant argues that the *Ruiz* holding should apply equally to insureds' work product. But Defendant does not address the rationale behind the *Ruiz* decision; Defendant simply states that the insured is permitted to invade the work product of the insurer, so the insured should also be able to do so. It is not clear, however, that the concerns expressed by the *Ruiz* court with regard to the availability of evidence apply equally to an insurer's affirmative defense. Specifically, Defendant has not addressed whether Plaintiff's otherwise work product protected information is the only, or at least virtually the only, source of evidence to support its affirmative defense.

Further, district courts in Florida disagree as to whether federal or state law applies to the work product analysis in this context—i.e., where the Court is exercising diversity jurisdiction over a bad faith claim where the underlying action took place entirely in state court. *Cozort v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674, 676 (M.D. Fla. 2005) (determining that state law applies to the work product analysis where the underlying bad faith case was brought, litigated, and resolved in state court); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699–700 (S.D. Fla. 2007) (determining that federal law applies to work product protection and distinguishing *Cozort* because, *inter alia*, *Milinazzo* did not involve a bad faith claim); *see also Batchelor v. Geico Cas. Co.*, No. 6:11-cv-1071-Orl-37GJK, 2014 WL 3697682, at *5 (M.D. Fla. June 4, 2014) ("While

federal law provides the framework for assessing the applicability of the work-product privilege and whether it has been overcome in a diversity case, state law nevertheless remains instructive in determining whether there is a substantial need for materials otherwise protected by the privilege."), *aff'd*, No. 6:11-cv-1071-Orl-37GJK, 2014 WL 3687492 (M.D. Fla. July 17, 2014); *Woolbright v. GEICO Gen. Ins., Co.*, No. 12-21291-CV-UNGARO/TORRES, 2012 WL 12864931, at *3 (S.D. Fla. Nov. 16, 2012) (stating that "[u]nlike the attorney-client privilege, work product protection is governed by federal law even in diversity cases. But in bad faith cases where Florida work product protection governed the underlying case, Florida law is relevant" and citing, among other cases, *Cozort* and *Milinazzo* (internal citations omitted)).

The Court need not resolve this issue. Having determined that *Ruiz* does not create a blanket exception to the work product doctrine for the insureds' work product protected information, the Court must engage in the typical work product analysis, and federal and state law on this matter are, for all relevant purposes, the same. *Compare* Fed. R. Civ. P. 26(b)(3), *with* Fla. R. Civ. P. 1.280(b)(4). The Court also notes that Defendant did not object to Judge Spaulding's application of federal law.

To compel the disclosure of work product protected information, Rule 26(B)(3)(A)(ii) requires Defendant to establish "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See also* Fla. R. Civ. P. 1.280(b)(4) (requiring a showing "that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means" to obtain discovery of work product). Further, "opinion work product"—i.e., "[m]aterial that reflects an attorney's mental impressions, conclusions, opinions, or legal theories"— "enjoys a nearly absolute immunity and can be

discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel &*
*Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (quotation omitted), *opinion modified on reh'g*, 30
F.3d 1347 (11th Cir. 1994) (modifying unrelated portion of the opinion).

Judge Spaulding determined that Defendant failed to satisfy even the basic requirements
of Rule 26(b)(3), much less the "extraordinary circumstances" required to compel discovery of
opinion work product. Judge Spaulding specifically noted that Defendant "has not shown that it
cannot discover from [Plaintiff] the reasons she decided not to accept [Defendant's] settlement
offer." (Doc. 70 at 21).  In its objections, Defendant does not attempt to satisfy this deficiency.
Instead, Defendant states that whether or not Plaintiff would have settled the underlying case
within the policy limits is directly at issue in Defendant's affirmative defense and the work product
materials contain information that address this matter. Again, Defendant has failed to explain why
this same information cannot be obtained from another source, for example deposing Plaintiff. The
Court agrees with Judge Spaulding that Defendant has failed to establish that it has a substantial
need for the work product in this case.

Accordingly, Defendant has failed to establish that Judge Spaulding's Order compelling
the return of Plaintiff's inadvertently disclosed privileged and protected materials was clearly
erroneous and contrary to law. The Order will be affirmed.

## IV.    MOTION TO DISQUALIFY COUNSEL

Plaintiff has moved to disqualify the Young Firm due to the receipt, review, and retention
of the inadvertently disclosed privileged and protected documents. Judge Spaulding recommends
granting the Motion for Disqualification. Defendant objects.

### A.    Legal Framework

Although disqualification is a drastic remedy, it is necessary in certain circumstances where there has been an inadvertent disclosure. "The receipt of an inadvertent disclosure warrants disqualification when the movant establishes that: (1) the inadvertently disclosed information is protected, either by privilege or confidentiality; and (2) there is a 'possibility' that the receiving party has obtained an 'unfair' 'informational advantage' as a result of the inadvertent disclosure." *Moriber v. Dreiling*, 95 So. 3d 449, 454 (Fla. 3d DCA 2012) (citing *Atlas Air, Inc. v. Greenberg Traurig, P.A.*, 997 So. 2d 1117, 1118 (Fla. 3d DCA 2008); *Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Decor, Inc.*, 724 So. 2d 572, 573–74 (Fla. 3d DCA 1998) ("*Abamar II*")). But "a movant is 'not required to demonstrate specific prejudice in order to justify disqualification.'" *Abamar II*, 724 So. 2d at 573 (quoting *Junger Util. & Paving Co. v. Myers*, 578 So. 2d 1117, 1119 (Fla. 1st DCA 1989) and citing *Zarco Supply Co. v. Bonnell*, 658 So. 2d 151, 154–55 (Fla. 1st DCA 1995)).

To determine whether an unfair informational advantage was obtained, the Court considers the content of what was disclosed; the extent the information was "reviewed, copied, or disseminated"; and "the actions of the receiving attorneys" upon obtaining the privileged or protected information. *Moriber*, 95 So. 3d at 454. In reviewing the receiving attorney's actions, the Court considers Rule 4-4.4(b) of the Rules Regulating the Florida Bar and Federal Rule of Civil Procedure 26(b)(5)(B). *See Abamar II*, 724 So. 2d at 574 n.2 (noting that "an attorney who . . . complies with the obligation to *promptly notify* and to *return immediately* the inadvertently produced documents without exercising any *unfair* advantage (such as photocopying the "confidential documents" prior to returning them), will not be subject to disqualification" and citing Rule 4-4.4(b)); *see also* Fed. R. Civ. P. 26(b)(5)(B) (requiring a party who receives inadvertently produced privileged or protected information to, among other things, "promptly return, sequester, or destroy" such information).

"The party moving to disqualify counsel bears the burden of proving grounds for disqualification." *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, 861 F. Supp. 2d 1346, 1350 (S.D. Fla. 2012) (quotation omitted). Because a party is presumptively entitled to counsel of its choice, disqualification should be ordered only for compelling reasons. *Id.*

### B.     Analysis

The Court agrees with Judge Spaulding's analysis that Plaintiff has established a sufficient possibility that the Young Firm obtained an unfair informational advantage by reviewing the privileged or protected information in the Sutton File, and therefore, the Young Firm must be disqualified.

First, the Young firm argues that it should not be disqualified because Plaintiff has not established the threshold matter of whether the information at issue here is privileged or protected. This argument is without merit. Defendant stipulated that Plaintiff met her *prima facie* case of establishing that the documents listed in the Second Amended Privilege Log were privileged or protected, and the Young Firm has provided no basis on which this Court could determine that, despite the documents being *prima facie* privileged or protected, they would otherwise be discoverable. Indeed, the information contained in Sutton's notes—his opinions as to whether Plaintiff should accept the policy limits and his thoughts and impressions regarding the viability of Plaintiff's bad faith claim—fall squarely within the work product protection set forth in Federal Rule of Civil Procedure 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.")).

With regard to Judge Spaulding's analysis, the Young Firm first objects to her determination that it failed to comply with Rule 4-4.4(b). That Rule provides: "A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent must promptly notify the sender." The Young Firm contends that it did not know, nor should it have known that the information contained in the Sutton File was privileged or protected when the file was received.

As Judge Spaulding explained, Yaffa confirmed twice in writing that he would only be producing non-privileged documents from the Sutton File and that he would be producing a privilege log. In addition, the documents, on their face, were clearly privileged, and several documents implicated Cunningham as a witness in this case. Kidd's testimony that sometimes attorneys choose to produce privileged information for strategic purposes does not change this fact. First, as noted previously, no one from the Young Firm asserted that they had ever received an entire underlying litigation file without any privilege asserted. Instead, the instances pointed to by Kidd involved the production of certain documents which were favorable to the plaintiffs' cases. Kidd also emphasized the fact that the entire file was produced without a privilege log, but that fact actually weighs against the Young Firm. It was not reasonable for Kidd to assume that, despite Yaffa's representations that a privilege log would be prepared, he knowingly produced the entire Sutton File—17,000-plus pages—without asserting a single privilege, particularly given the fact that the file contained privileged information that was unfavorable to his case and that could make an attorney at his firm a witness in the case. Moreover, Kidd herself testified that she was surprised by the disclosure and thought it was unusual. Further, given the obviousness of the privileged nature of some of the documents and Young's extensive litigation experience, he would

have undoubtedly recognized the inadvertent disclosure had he not been preoccupied with three back-to-back trials. After considerable deliberation, the Court will not attach ill-will or bad faith to the Young firm's actions in failing to recognize the inadvertent disclosure. The Court however agrees with Judge Spaulding that the Young Firm failed to comply with Rule 4-4.4(b).

The Young Firm also failed to comply with Rule 26(b)(5)(B). That Rule provides, in relevant part, that "[a]fter being notified [of an inadvertent disclosure], a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; [and] must take reasonable steps to retrieve the information if the party disclosed it before being notified." In an effort to comply with this Rule, the Young Firm agreed to sequester the Sutton File. Despite this representation, however, Kidd used and disclosed information contained in the supposedly sequestered Sutton File in her Motion to Compel. Even more concerning is the fact that Kidd and Young disregard the significance of Kidd's actions. At the evidentiary hearing, Kidd and Young repeatedly categorized Kidd's use of privileged information as merely putting quote marks around two words. That is not the case. Kidd used information in violation of the Federal Rules of Civil Procedure, the Rules Regulating the Florida Bar, and her own promise.[9]

Finally, the Young Firm argues that the remedy of excluding the use of the documents in this case is sufficient to remediate any prejudice. In so arguing, the Young Firm asserts that Judge Spaulding misconstrued the importance of this information to its client's defense. There is

---

[9] It is worth noting that the Court was perilously close to attributing bad faith to Kidd's actions. One more cynical than the undersigned might reasonably conclude that the Young Firm stumbled upon a treasure trove of privileged information then, in making a conscious decision to keep it, invented arguments inconsistent with their own prior words and deeds. Admittedly, it is a bit of a stretch to find that Kidd simply had a lapse in judgment, but the Court will reluctantly leave it at that.

substantial evidence on the record that Defense counsel found these protected documents to be significant to their defense—so much that they discussed the contents of the documents with their client in the context of whether to settle the case. Further, information regarding the contents of the protected information was transmitted electronically to Defendant, and Defendant has not been able to sufficiently establish that all such information has been deleted.

Thus, all of the requirements for disqualification are met. The contents of the protected information is highly impactful with regard to Defendant's defense, as evidenced by Young and Kidd's own testimony. This information was extensively reviewed, copied, discussed, and disseminated to Defendant, and it is not clear that all such information has been destroyed. Further, the actions of the Young Firm upon receipt and notification of the privileged information certainly weigh in favor of disqualification. *See Atlas Air, Inc.*, 997 So. 2d at 1118 ("Because there is no requirement that prejudice be shown, and it is so difficult to measure how much of an advantage, if any, was obtained due to the inadvertent disclosure of privileged documents, the court must look to the actions taken by the receiving lawyer or law firm in determining whether the drastic remedy of disqualification is warranted." (citations omitted)) (Rothenberg, J., concurring).

Finally, the Court notes that what is required for disqualification is a showing that there is a "possibility" that an unfair informational advantage was obtained, not a showing of specific prejudice. Thus, even if the couple of documents discussed extensively by the parties do not establish that the Young Firm gained an unfair information advantage, Kidd testified that she viewed every document in the Sutton File, and Young testified that he cannot remember, precisely, what he reviewed. Further, throughout these procedures Young's memory has been jogged at least once, causing him to recall more in-depth information. The prospect of future revelations supports

a finding that the Young Firm obtained an unfair informational advantage that cannot be remediated by any remedy other than disqualification.

Further, at the evidentiary hearing, the Cunningham Firm indicated that it would be seeking to withdraw as counsel once these issues were decided. As set forth below, if the Cunningham Firm intends to do so, it must file a motion to withdraw.

## V.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Objection (Doc. 81) to the Magistrate Judge's Order (Doc. 70) granting Plaintiff's Motion to Compel and deferring ruling on Plaintiff's Motion for Sanctions (Doc. 67) is **OVERRULED** and Order (Doc. 70) is **AFFIRMED**. As set forth in Judge Spaulding's Order, the Motion to Compel (Doc. 67) is **GRANTED** insofar as it seeks return of the inadvertently produced privileged or protected documents. The Cunningham Law Firm shall promptly advise the Court in writing whether it wishes to pick up the complete Sutton Litigation File provided to the Clerk of Court by the Young Law Firm, formerly filed at Doc. Nos. 47-56, or whether it wishes the Clerk of Court to destroy those documents.

2. The Amended Report and Recommendation (Doc. 106) is **ADOPTED** and **CONFIRMED** and made part of this Order.

3. Plaintiff's Motion to Disqualify [Defendant's] Counsel, and Motion for Sanctions (Doc. 29) is **GRANTED** insofar as it seeks the disqualification of the Young Firm; it is **DENIED** in all other respects.

4. The Clerk is directed to terminate Attorneys Amanda L. Kidd, B. Richard Young, and Stephanie Ann McQueen as attorneys of record in this case.

5.  Defendant shall obtain new counsel, and such counsel shall file a notice of appearance **on or before Monday, May 1, 2017**.

6.  **On or before Monday, May 1, 2017,** the Cunningham Firm shall file a motion to withdraw as counsel or a notice that it does not intend to do so with an explanation for its decision.

7.  All deadlines in this case are **STAYED** until further order of the Court. Upon appearance of new counsel, the Court will set a status conference to determine the deadlines moving forward in this case.

8.  The Joint Motion to Extend Dispositive Motion Deadline (Doc. 110) is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida on March 30, 2017.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record